754 Fed.Appx. 696
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007.
See also U.S.Ct. of App. 10th Cir. Rule 32.1.
United States Court of Appeals, Tenth Circuit.

Stephen Craig BURNETT, Plaintiff-Appellant,
v.
Mary FALLIN, Governor of Oklahoma, in her official capacity, and in her individual capacity; Patricia High, in her individual capacity; Robert Macy, member of the Pardon and Parole Board, in his official capacity, and in his individual capacity; Thomas C. Gillert, member of the Pardon and Parole Board, in his official capacity, and in his individual capacity; William Latimer, in his individual capacity; Vanessa Price, in her individual capacity; Erika Denton, Parole Investigator for Pardon and Parole Board, in her official capacity, and in her individual capacity C. Allen McCall, member of the Pardon and Parole Board, in his official capacity; Michael Steele, member of the Pardon and Parole Board, in his official capacity; Roberta Fullerton, member of the Pardon and Parole Board, in her official capacity,[*] Defendants-Appellees.

No. 17-6141
|
Filed October 22, 2018

**Synopsis**
**Background:** Prisoner serving sentence of live with possibility of parole brought § 1983 action asserting changes in Oklahoma parole process violated his rights under the Due Process Clause, the Ex Post Facto Clause, and the Eighth Amendment. The United States District Court, Western District of Oklahoma, Vicki Miles-Lagrange, J., dismissed for failure to state a claim and assigned prisoner a strike under the Prison Litigation Reform Act (PLRA). Defendant appealed.

**Holdings:** The Court of Appeals, Carolyn B. McHugh, Circuit Judge, held that:

[1] prisoner had no liberty interest in parole, as required to support a due process claim based solely and independently on changes in the Oklahoma parole process;

[2] prosecution did not breach plea agreement in violation of due process;

[3] prisoner failed to make any allegation that the likelihood of governor granting parole changed as a result of changes to Oklahoma's two-tiered parole system, as required to raise either a facial or an as applied challenge under the Ex Post Facto Clause;

[4] prisoner failed to allege that the governor or any member of the pardon and parole board knew the prisoner faced a substantial risk of harm with regard to changes in parole process, and disregarded that risk by failing to take reasonable measures to abate it, as required to prevail on the subjective component of an Eighth Amendment claim; and

[5] dismissal of prisoner's claims for failure to state a claim did not preclude the grant of in forma pauperis status on appeal.

Dismissal and assignment of strike affirmed, and motion to proceed in forma pauperis granted.

West Headnotes (6)

[1]   **Federal Civil Procedure**
      ⬤ Forma pauperis proceedings
      **Prisons**
      ⬤ Frivolous claims; screening
      Magistrate judge clearly erred in screening pro se prisoner's complaint by faulting prisoner for not producing "evidence" in support of his claim that changes in Oklahoma's parole process violated the Ex Post Facto Clause; as the case was only at the pleadings stage,

prisoner did not have the opportunity to present evidence. U.S. Const. art. 1, § 10, cl. 1; 28 U.S.C.A. §§ 1915(e), 1915A.

Cases that cite this headnote

### [2] Constitutional Law
 Parole

**Pardon and Parole**
 Discretionary nature

Prisoner had no liberty interest in parole, as required to support a due process claim based solely and independently on changes in the Oklahoma parole process; statute that established a discretionary parole scheme did not sufficiently limit the parole board's discretion so as to convey a liberty interest in parole, when, even though the statute required the board to consider a prisoner's conduct in prison, such consideration was basis for consideration of said person for recommendation to the governor for parole, and implicit in the statute was the board's ability to, as an individual case might warrant, consider other relevant factors. U.S. Const. Amend. 14; 57 Okla. Stat. Ann. § 332.7.

Cases that cite this headnote

### [3] Constitutional Law
 Plea agreements

**Criminal Law**
 Representations, promises, or coercion; plea bargaining

Prosecution did not breach plea agreement, under which defendant pled guilty in Oklahoma State court to first-degree murder and automobile larceny charges, in violation of prisoner's due process rights; plea agreement did not promise prisoner a fixed set of parole procedures and criteria, prisoner implicitly conceded it was foreseeable at the time of his plea that the view of key individuals in the parole process might change, and nothing in the regulations at the time of the plea agreement precluded the parole board from considering prisoner's offense.

U.S. Const. Amend. 14; 57 Okla. Stat. Ann. § 332.7(I).

Cases that cite this headnote

### [4] Constitutional Law
 Parole

**Pardon and Parole**
 Constitutional and Statutory Provisions

Prisoner failed to make any allegation that the likelihood of governor granting parole changed as a result of changes to Oklahoma's two-tiered parole system, as required to raise either a facial or an as applied challenge under the Ex Post Facto Clause; to the contrary, prisoner alleged governor championed a tough on crime agenda, and had made it clear in the media that she would not sign parole approval for any violent offender. U.S. Const. art. 1, § 10, cl. 1.

Cases that cite this headnote

### [5] Pardon and Parole
 Constitutional and Statutory Provisions

**Sentencing and Punishment**
 Parole

Prisoner failed to allege that the governor or any member of the pardon and parole board knew the prisoner faced a substantial risk of harm with regard to changes in parole process, and disregarded that risk by failing to take reasonable measures to abate it, as required to prevail on the subjective component of an Eighth Amendment claim based on indifference to an inmate's health or safety. U.S. Const. Amend. 8.

Cases that cite this headnote

### [6] Federal Civil Procedure
 Forma pauperis proceedings

**Federal Courts**
 Grounds for permitting or refusing

Dismissal of prisoner's § 1983 claims based on changes in the Oklahoma parole process for failure to state claim counted as a strike for

purposes of the three-strike rule for prisoners proceeding in forma pauperis, but since the third strike would not ripen for purposes of the Prison Litigation Reform Act (PLRA) until the dismissal became final, it did not preclude the grant of in forma pauperis status on appeal. 28 U.S.C.A. § 1915(g); 42 U.S.C.A § 1983.

Cases that cite this headnote

**\*698** (D.C. No. 5:17-CV-00392-M) (W.D. Oklahoma)

**Attorneys and Law Firms**

Laura Mcnabb, Gwen J. Young, Wheeler Trigg O'Donnell, Denver, CO, for Plaintiff-Appellant

Randall John Yates, Associate Solicitor, Office of the Attorney General for the State of Oklahoma, Oklahoma City, OK, for Defendants-Appellees

Before BRISCOE, KELLY, and McHUGH, Circuit Judges.

## ORDER AND JUDGMENT[**]

Carolyn B. McHugh, Circuit Judge

Stephen Craig Burnett is an Oklahoma prisoner serving a sentence of life with the possibility of parole. Mr. Burnett filed a complaint under 42 U.S.C. § 983, asserting that changes in Oklahoma's parole process violated his rights under the Due Process Clause, the *Ex Post Facto* Clause, and the Eighth Amendment. The district court dismissed Mr. Burnett's complaint based on a failure to state a claim upon which relief can be granted and as barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). On appeal, Mr. Burnett argues he pleaded sufficient facts to allow the inference that, for all intents and purposes, changes in the parole process converted his sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Mr. Burnett further argues the relief requested in his complaint did not include speedier release, thus placing his claims outside the contours of the *Heck*-bar.

We conclude Mr. Burnett's complaint fails to allege facts capable of supporting a due process, *ex post facto*, or Eighth Amendment claim. And because Mr. Burnett's complaint does not state a claim upon which relief can be granted, we affirm the district court's judgment without deciding whether *Heck* bars any of Mr. Burnett's claims.

## I. BACKGROUND

### A. *Mr. Burnett's Imprisonment & the Oklahoma Parole System*

In 1994, Mr. Burnett pleaded guilty to first-degree murder and automobile larceny charges. The charges stemmed from Mr. Burnett shooting his wife after he learned she was having an affair, placing her body in the trunk of a car, driving the car to Texas, and fleeing to the Philippines. In accord with the terms of the plea agreement, Mr. Burnett received a sentence of life with the possibility of parole on the first-degree murder conviction.[1]

**\*699** Oklahoma's parole system is two tiered, with the Pardon and Parole Board ("Parole Board") acting as an initial gatekeeper and the Governor having the ultimate authority and responsibility for granting or denying parole relative to those inmates for whom the Parole Board issues a favorable recommendation. *See* Okla. Stat. tit. 57, § 332.16. At the time of Mr. Burnett's offense, the statute establishing parole criteria stated, in pertinent part:

> [I]t shall be the duty of the Pardon and Parole Board to cause an examination to be made at the penal institution where the person is assigned, and to make inquiry into the conduct and the record of the said person during his custody in the Department of Corrections, which shall be considered as a basis for consideration of said person for recommendation to the Governor for parole.

Okla. Stat. tit. 57, § 332.7(A) (West 1993). With the exception of prospective parolees "convicted of three

or more felonies arising out of separate and distinct transactions, with three or more incarcerations for such felonies," the then-governing statute was silent as to whether the Parole Board should consider an individual's offense of conviction or criminal history. See Okla. Stat. tit. 57, § 332.7 (West 1993).

As Mr. Burnett committed his offense before July 1, 1998, he became eligible for consideration for parole upon the completion of one-third of his sentence. See Okla. Stat. tit. 57, § 332.7(A) (West 2004). Where a defendant is serving a life sentence, his sentence is treated as a forty-five-year sentence for purposes of the one-third requirement in title 57, section 332.7(A) of the Oklahoma Statutes. See Anderson v. State, 130 P.3d 273, 282 (Okla. Crim. App. 2006) (citing Okla. Pardon & Parole Bd. Policy 004 I.A.3.a.). Thus, the Parole Board deemed Mr. Burnett first eligible for parole on his life sentence in 2010.[2] Lisa Reading, a parole investigator, drafted a report to the Parole Board that detailed Mr. Burnett's offense conduct, his prison disciplinary record, and his work history. Although Ms. Reading assigned Mr. Burnett a "[r]isk score: 1 (Low)," she recommended denying parole based on Mr. Burnett's history of prison misconduct reports. Suppl. ROA at 15. The Parole Board adopted the recommendation and denied parole.

The Parole Board next considered Mr. Burnett for parole in 2013.[3] Erika Denton[4] served as the parole investigator and submitted a report to the Parole Board in October 2013. Like the 2010 report, the October 2013 report detailed the facts of Mr. Burnett's offense; outlined Mr. Burnett's **\*700** prison disciplinary record, work performance in prison, and participation in prison programs; and provided a risk assessment. Ms. Denton assigned Mr. Burnett a total risk score of negative 2 and an overall risk level of low. Focusing on his recent conduct in prison, Ms. Denton recommended parole, stating: "Yes. Parole to the [consecutive sentence] case is recommended. Offender has spent 20 years of this sentence and has maintained clear conduct for over 3 years. When he was able to work his evaluations were excellent to outstanding." Suppl. ROA at 19; ROA at 12.

In November 2013, new criteria governing parole took effect. The new criteria require the Parole Board to "consider the prior criminal record of inmates under consideration for parole recommendation or granting of parole." Okla. Stat. tit. 57, § 332.7(I). In December 2013, the Parole Board rejected the favorable recommendation in the October 2013 report and denied parole without explanation. The Parole Board next considered Mr. Burnett for parole in 2016, with Ms. Denton again serving as the parole investigator. Like the previous reports, the 2016 report detailed the facts of Mr. Burnett's offense and summarized his prison disciplinary record, work performance in prison, and participation in prison programs. Unlike the previous reports, however, the 2016 report did not include a risk assessment. And, also unlike the previous reports, the recommendation in the 2016 report focused on the nature of Mr. Burnett's offense, not his conduct in prison. Specifically, in recommending against parole, Ms. Denton wrote: "No, parole is not recommended due to the heinous nature of the crime. Offender not only killed his wife, but put her body in the trunk of a car not to be found for days. After the murder, he fled the country in hopes of never being caught." Suppl. ROA at 22; ROA at 12. The Parole Board denied parole, again without providing an explanation. Mr. Burnett's next opportunity for parole consideration is scheduled for December 2019.

### B. *Mr. Burnett's Complaint*

Following the 2016 denial of parole, Mr. Burnett filed a three-count complaint pursuant to 42 U.S.C. § 1983. Mr. Burnett named Governor Mary Fallin, the five members of the Parole Board, and Ms. Denton as defendants.[5] In count one, Mr. Burnett raised a procedural and substantive due process claim, alleging the changes in the statutory scheme governing the parole process converted his sentence of life with the possibility of parole into a sentence of life without the possibility of parole and violated the terms of his plea agreement.[6] In count two, Mr. Burnett raised an *Ex Post Facto* Clause challenge to the retroactive application of parole procedures adopted after he committed his offense, focusing on an as applied challenge rather than a facial challenge. In count three, Mr. Burnett raised an Eighth **\*701** Amendment claim, alleging the denial of parole had a "devastating affect [sic] on his mental state of mind" and caused him to suffer depression, severe headaches, loss of sleep, and stomach pain.[7] ROA at 16–17. Mr. Burnett sought money damages, declaratory relief in the form of an order stating that application of the new parole procedures violated his constitutional rights, and injunctive relief

requiring the Parole Board to apply the 1993 procedures at future parole hearings. Mr. Burnett, however, specifically disclaimed any attempt to obtain an order from the federal court granting him clemency, parole, or release from prison.

### C. *Dismissal of Complaint & Arguments on Appeal*

**[1]** A magistrate judge screened Mr. Burnett's complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A and recommended dismissing all three claims and assigning Mr. Burnett a strike under the Prison Litigation Reform Act ("PLRA"). Relative to the issues argued on appeal, the magistrate judge concluded: (1) *Heck* barred Mr. Burnett from recovering money damages on his due process claim; (2) Mr. Burnett failed to state a due process claim because there is no Fourteenth Amendment liberty interest in parole; (3) Mr. Burnett failed to state an *ex post facto* claim because any increase in punishment from the changes in the parole process was "speculative" and "attenuated"; and (4) Mr. Burnett failed to state an Eighth Amendment claim because his allegations were "amorphous" and did not allege a significant risk of harm to personal safety.[8] Over Mr. Burnett's objections, the district court adopted the report and recommendations, dismissed Mr. Burnett's action, and assigned Mr. Burnett a strike under the PLRA.

Through a pro se opening brief, Mr. Burnett challenged the dismissal of each of his three claims for relief, as well as the assignment of a strike under the PLRA. This court appointed Mr. Burnett counsel. Through counsel, Mr. Burnett argued his claims were not barred by *Heck* and his complaint alleged sufficient facts to advance a due process claim and an *ex post facto* claim. On the sufficiency of the pleadings issue, Mr. Burnett argues he has a due process interest in the state abiding by the plea agreement and that the changes in the parole process amount to a breach of the plea agreement. In response, Appellees (1) argue the plea agreement did not contain a promise of a fixed set of parole criteria, only an opportunity to be considered for discretionary parole; and (2) repeat the magistrate judge's conclusion that a prisoner does not have a liberty interest in the parole process. Turning to the *ex post facto* claim, Mr. Burnett argues factual development through discovery might result in evidence showing that, as applied, the new parole process presents a significant risk of increasing the duration of his imprisonment. In response, Appellees **\*702** argue Mr. Burnett cannot show a significant risk of an increased duration of incarceration under the new parole process because (1) nothing prevented the Parole Board from considering his criminal history under the 1993 statute; (2) a favorable recommendation by the Parole Board does not mean Mr. Burnett would be paroled as the governor might reject the recommendation; and (3) Mr. Burnett's complaint contains allegations that defeat his claim, in that he alleges the governor would reject any favorable recommendation by the Parole Board regardless of the criteria it used.

### II. DISCUSSION

### A. *Standard of Review*

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "Dismissal for failure to state a claim is a legal question we review de novo." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). This remains the case where the dismissal is the result of a district court screening a complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A rather than a dismissal following a Federal Rule of Civil Procedure 12(b)(6) motion. *See id.* (discussing standard of review in context of §§ 1915(e), 1915A dismissal). When reviewing the sufficiency of the pleadings for purposes of Rule 8(a), "[w]e must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Id.* (quotation marks omitted). To avoid dismissal, "a complaint must contain enough allegations of fact ... 'to state a claim to relief that is plausible on its face.' " *Khalik*, 671 F.3d at 1190 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). Finally, "we must construe a pro se appellant's complaint liberally" and "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217, 1218 (10th Cir. 2007) (quotation marks omitted).

### B. *Due Process Clause Claim*

Mr. Burnett's complaint can be liberally construed as raising two claims under the Due Process Clause: (1) he has a standalone due process right with respect to the procedures used at his parole hearings and (2) his due process rights were violated because application of the new parole procedures breaches his plea agreement.[9] We consider each potential claim in turn. Concluding that neither set of allegations states a plausible violation of the Due Process Clause, we affirm the district court's dismissal of count one of Mr. Burnett's complaint.

**1. Changes in Parole Process**

[2] The Due Process Clause of the Fourteenth Amendment states, in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. " 'To determine whether due process requirements apply in the first *703 place, we must look not to the "weight" but to the *nature* of the interest at stake.' " *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ). In accord with the language of the Fourteenth Amendment, "[t]he Due Process Clause applies when government action deprives a person of liberty or property." *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994) (quoting *Greenholtz*, 442 U.S. at 7, 99 S.Ct. 2100). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicitly in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1212 (10th Cir. 2009) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ). "The extent of the due process protection for prisoners ... is significantly less than that guaranteed to free persons." *Id.*

The question of whether a prisoner has a liberty interest in parole is well-settled, with courts concluding that a liberty interest generally does not arise. *See Greenholtz*, 442 U.S. at 7, 99 S.Ct. 2100 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.... [T]he conviction, with all its procedural safeguards, has extinguished that liberty right...."); *id.* ("[T]here simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations."); *Straley*, 582 F.3d at 1214 ("[T]he mere existence of a purely discretionary parole authority creates no entitlement and, therefore, no concomitant federal due process interest."); *Malek*, 26 F.3d at 1015 ("Not only is there no constitutional or inherent right to receive parole prior to the expiration of a valid sentence, but, absent state standards for the granting of parole, decisions of a parole board do not automatically invoke due process protections." (citing *Greenholtz*, 442 U.S. at 7–8, 99 S.Ct. 2100) ). An exception to this general rule against the existence of a liberty interest exists where a state's parole statute "sufficiently limits the discretion of a parole board" such that "a prisoner has a legitimate claim of entitlement to [parole]." *Straley*, 582 F.3d at 1212–13. A recognized example of such an exception is when a state statute makes parole mandatory rather than discretionary. *See id.* at 1213.

Here, the 1993 version of title 57, section 332.7 of the Oklahoma Statutes established a discretionary parole scheme that did not sufficiently limit the Parole Board's discretion so as to convey upon Mr. Burnett a liberty interest in parole. Although the 1993 version of § 332.7 required the Parole Board to consider the prospective parolee's conduct in prison, this consideration was "*a basis* for consideration of said person for recommendation to the Governor for parole." Okla. Stat. tit. 57, § 332.7(A) (West 1993) (emphasis added). Based on our construction of § 332.7, implicit in the emphasized language was the Parole Board's ability to, as an individual case might warrant, consider other relevant factors. Furthermore, the 1993 version of § 332.7 placed no limitations on the governor's exercise of her authority to grant or deny parole. Accordingly, where the governing state statute placed no meaningful limitations on the Parole Board's or the governor's discretion to deny parole, Mr. Burnett cannot establish a "legitimate claim of *entitlement* to [parole]," *see Straley*, 582 F.3d at 1213 (emphasis added), and cannot state a due process claim based solely and independently on the changes in the parole process.

**2. Breach of Plea Agreement**

[3] "Interpreting the terms of a plea bargain involves a two-step process. The *704 court must first examine the nature of the prosecutor's promise. Next, the court examines this promise based upon the defendant's reasonable understanding upon entry of the guilty plea."

*Cunningham v. Diesslin*, 92 F.3d 1054, 1059 (10th Cir. 1996) (citation omitted). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "If the government breaches express or implied terms of a plea agreement, a violation of due process occurs." *Gibson v. Klinger*, 232 F.3d 799, 803 (10th Cir. 2000) (quoting *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994) ).

Mr. Burnett's allegations on this matter boil down to three contentions: (1) he entered into a plea for a sentence of life with the possibility of parole; (2) it was his understanding, based on the advice of plea counsel, that he would not spend the rest of his life in prison; and (3) the changes in parole process greatly diminish his prospects for parole such that his sentence is effectively a life without parole sentence. For three reasons, Mr. Burnett's allegations fail to state a plausible due process claim based on a breach of his plea agreement.

First, Mr. Burnett fails to allege his plea agreement promised him a fixed set of parole criteria. In this respect, Mr. Burnett's complaint suffers from the same deficiency from which the breach-of-plea claim in *Cunningham* suffered. There, Mr. Cunningham alleged the state breached his plea agreement when the parole board reinterpreted state statutes governing parole so as to render parole in his case discretionary rather than mandatory. *Cunningham*, 92 F.3d at 1056–57. As a result, rather than automatically being paroled after eight-and-a-half years' imprisonment, Mr. Cunningham gained only parole eligibility and faced the possibility of having to serve his full seventeen-year term. *See id.* Although recognizing the gravity of the change from mandatory to discretionary parole relative to the execution of Mr. Cunningham's term of imprisonment, this court concluded the state did not breach the plea agreement because "mandatory parole was not a part of the plea offer [and] [Mr.] Cunningham does not now allege to the contrary." *Id.* at 1059; *see also Lustgarden v. Gunter*, 966 F.2d 552, 554–55 (10th Cir. 1992). Here, Mr. Burnett does not allege his plea agreement contained a provision that explicitly promised him a fixed set of parole procedures and criteria. And, as this court in *Cunningham* did not read the then-in-effect mandatory parole scheme into Mr. Cunningham's plea agreement despite the grave effect of the change on Mr. Cunningham's ability to obtain parole, we see no reason to read a fixed parole process into Mr. Burnett's plea agreement where the change may have no impact on Mr. Burnett's ability to obtain parole. Thus, any post-plea amendment to § 332.7 did not violate a term of Mr. Burnett's plea agreement.

Second, in explicitly conceding the discretionary nature of parole in Oklahoma and the governor's crucial role in both appointing members to the Parole Board and reviewing any favorable parole recommendations, Mr. Burnett implicitly concedes it was foreseeable at the time of his plea that the views of key individuals in the parole process might change. *Cf. Garner v. Jones*, 529 U.S. 244, 253, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) ("[W]e can say with some assurance that where parole is concerned[,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience."). As such, in **\*705** the absence of the plea agreement directly speaking in favor of a fixed parole process, Mr. Burnett cannot plausibly allege that he reasonably understood the plea agreement to contain a promise of a fixed parole process.

Third, while Mr. Burnett challenges the applicability of the requirement in § 332.7(I) that the Parole Board must consider his offense of conviction, nothing in the regulations at the time of plea agreement precluded the Parole Board from considering this information. Tellingly, the pre-amendment form of § 332.7(A) instructed the Parole Board to examine the prisoner's conduct during confinement "as a basis for consideration," thereby anticipating that the Parole Board would also assess other relevant factors. In fact, although § 332.7(I) did not take effect until November 2013, the 2010 and October 2013 parole investigations reports placed information about the offense of conviction, as well as Mr. Burnett's offense conduct, in front of the Parole Board. And, where this information was before the Parole Board prior to § 332.7(I) taking effect, the Parole Board was aware of and able to consider Mr. Burnett's offense of conviction and offense conduct. Thus, even assuming Mr. Burnett believed, when entering his plea agreement, that the parole process would remain generally unchanged, it is not apparent from his allegations that the addition of § 332.7(I) significantly alters the parole process. This is particularly true when considered in light of (1)

the consistent practice of informing the Parole Board of the offense of conviction and the offense conduct; and (2) the two-tiered parole system in Oklahoma, which has never placed limitations on the governor's authority and discretion to approve or deny a favorable recommendation by the Parole Board.

Accordingly, because Mr. Burnett does not allege that his plea agreement included an express provision guaranteeing him a fixed set of parole criteria, because parole was always discretionary in Oklahoma, and because § 332.7(I) and the other changes identified in Mr. Burnett's complaint do not significantly alter the parole process, Mr. Burnett fails to allege a plausible due process claim based on an alleged breach of his plea agreement.

### C. Ex Post Facto *Clause Claim*

**1. Governing Law**

Article I Section 10 of the United States Constitution "forbids ... the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; *or imposes additional punishment to that then prescribed.*' " Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (emphasis added) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1866) ). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id. at 29, 101 S.Ct. 960 (citations omitted). Relative to the second part of the analysis, "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the [*ex post facto*] prohibition' *must* be a matter of 'degree.' " Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (quoting Beazell v. Ohio, 269 U.S. 167, 171, 46 S.Ct. 68, 70 L.Ed. 216 (1925) ). A change in law producing only "the most speculative and attenuated possibility" of increasing the length of punishment does not violate the prohibition on *ex post facto* laws. Id. Instead, the change in law must "produce[ ] a sufficient risk of increasing the measure of punishment." Id. The Supreme Court, however, has affirmatively **\*706** recognized that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the *ex post facto*] precept." Garner, 529 U.S. at 250, 120 S.Ct. 1362.

A plaintiff may raise either a facial or an as applied challenge under the *Ex Post Facto* Clause. See id. at 255, 120 S.Ct. 1362 ("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule."). "Whether a particular law retroactively increases a criminal punishment is often a close question" because whether the risk of increased punishment rises to the level of a significant risk, rather than only a speculative and attenuated risk, often involves a fact-specific inquiry. Lynce v. Mathis, 519 U.S. 433, 450, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (Thomas, J., concurring in part and concurring in the judgment); see also Garner, 529 U.S. at 250, 120 S.Ct. 1362 ("Whether retroactive application of a particular change in parole law respects the prohibition on *ex post facto* legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account."). To answer this close question, a court should consider "the general operation of the ... parole system." Garner, 529 U.S. at 255, 120 S.Ct. 1362.

**2. Analysis**

a. *Retrospective application*

Mr. Burnett pleaded sufficient facts to satisfy the first element of an *ex post facto* claim. Simply put, the adoption of § 332.7(I) occurred after Mr. Burnett committed his offense (and after he pleaded guilty), yet the provision applies to his parole consideration. Thus, whether Mr. Burnett pleaded sufficient facts to advance an *ex post facto* claim rises and falls on the second element of that claim.

b. *Sufficient risk of increased punishment*

 **[4]**  In his complaint, Mr. Burnett alleged the change in criteria had a clear impact on the recommendation in Ms. Denton's 2016 parole investigation report in that she recommended parole prior to the adoption of § 332.7(I) but recommended against parole after its adoption. Mr. Burnett further alleged the change in criteria resulted in ODOC and the parole investigator no longer including a risk assessment in the report to the Parole Board, an assessment favorable to his parole prospects. And a liberal construction of Mr. Burnett's complaint might allow for the inference that, prior to the 2013 amendment to §

332.7, the Parole Board's primary focus in denying or recommending parole was on an inmate's conduct in prison.

The aforementioned allegations might be sufficient to plead a sufficient risk of increased punishment if the Parole Board possessed final authority to grant parole. As discussed above, however, Oklahoma's parole system is two-tiered, with the governor having ultimate discretionary authority over whether Mr. Burnett is granted parole. And Mr. Burnett's complaint does not include any allegation that the likelihood of the governor granting parole changed as a result of the adoption of § 332.7(I) or any other change in the parole procedures.

To the contrary, Mr. Burnett alleged Governor Fallin "championed a 'tough on crime' agenda"; "made it clear in public media that she will not sign parole approval for any violent offender"; and "appointed members [to] the [Parole] Board who are all either former law enforcement officers or a Judge," all with the goal of **\*707** limiting the prospects of an inmate obtaining parole. ROA at 11. As Governor Fallin possesses ultimate discretion to grant or deny parole following a favorable recommendation by the Parole Board, these allegations about Governor Fallin preclude the inference that there is a sufficient likelihood that a favorable recommendation by the Parole Board would result in Mr. Burnett actually receiving parole.

When the complaint is read on the whole and in light of the two-tiered parole review system in Oklahoma, Mr. Burnett has not pleaded sufficient facts to plausibly allege that the adoption of § 332.7(I), or any other change in the parole process, created a sufficient risk of increasing his incarceration on his first-degree murder conviction. Rather, taking Mr. Burnett's allegations as true, Governor Fallin's views on crime and parole are a "but for" cause of Mr. Burnett's continued incarceration regardless of the criteria used by the Parole Board when making parole suitability recommendations. Accordingly, Mr. Burnett's complaint fails to plead facts capable of plausibly supporting the second element of his *ex post facto* claim, and we affirm the district court's dismissal of this claim.

D. *Eighth Amendment Claim* [10]

[5] "Because 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,' a prison official must act with 'deliberate indifference to inmate health or safety' to violate the inmate's constitutional rights." *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ). As a result, a claim for "[d]eliberate indifference has both an objective and a subjective component." *Id.* "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (internal quotation marks omitted). "To prevail on the subjective component, the prisoner must show that *the defendant knew the prisoner faced a substantial risk of harm* and disregarded that risk[ ] by failing to take reasonable measures to abate it." *Castillo*, 790 F.3d at 1021 (emphasis added) (quotation marks omitted).

Mr. Burnett alleged the denial of parole amounted to deliberate indifference because it had a "devastating affect [sic] on his mental state of mind" and caused him to suffer depression, severe headaches, loss of sleep, and stomach pain. ROA at 16–17. Mr. Burnett's complaint, however, does not contain any allegations that he reported his symptoms to anyone at his facility of confinement, no less any of the named defendants. Nor does Mr. Burnett allege that any of the named defendants attempted to deny him treatment for his symptoms. Accordingly, even if his alleged symptoms amount to a serious medical condition for purposes of the objective component of an Eighth Amendment claim, Mr. Burnett fails to plead any allegations relative to the subjective component of an Eight Amendment deliberate indifference claim. Therefore, we affirm the district court's dismissal of Mr. Burnett's Eighth Amendment claim.

E. *Assignment of Strike* & In Forma Pauperis *Status*

[6] Section 1915(g) of Title 28 creates the three-strikes rule for prisoners proceeding *in forma pauperis* and states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil **\*708** action or proceeding under this section if the prisoner

has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"When an action or appeal is dismissed as frivolous, as malicious, or for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B), the dismissal counts as a strike." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1176 (10th Cir. 2011). Whether a dismissal for failure to state a claim is with or without prejudice is "immaterial" to the three-strikes analysis because the dismissal counts as a strike either way. *Childs v. Miller*, 713 F.3d 1262, 1266 (10th Cir. 2013).

In affirming the district court's dismissal of Mr. Burnett's complaint, we must affirm the district court's assignment of a strike. However, after a careful review of the arguments on appeal, we conclude that, although Mr. Burnett did not prevail, he raised non-frivolous arguments for reversing the district court's judgment such that we do not assign him a strike relative to this appeal. And, because Mr. Burnett raised non-frivolous arguments on appeal, we grant his motion to proceed *in forma pauperis*.[11] *See* 28 U.S.C. § 1915.

### III. CONCLUSION

We **AFFIRM** the district court's dismissal of Mr. Burnett's complaint, under 28 U.S.C. §§ 1915(e), 1915A, for failure to state a claim upon which relief can be granted. We further **AFFIRM** the district court's assignment of a strike relative to the dismissal of Mr. Burnett's complaint. Concluding, however, that Mr. Burnett raised non-frivolous arguments on appeal, we do not assign Mr. Burnett a strike relative to this appeal, and we **GRANT** his motion to proceed *in forma pauperis*.

**All Citations**

754 Fed.Appx. 696

Footnotes

\*  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), C. Allen McCall, Michael Steele, and Roberta Fullerton, current members of the Oklahoma Pardon and Parole Board, are automatically substituted for Patricia High, William Latimer, and Vanessa Price in their official capacities as former members of the Oklahoma Pardon and Parole Board.

\*\*  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

1  Mr. Burnett received a fifteen-year sentence on the automobile larceny conviction, to run consecutively with his sentence on the first-degree murder conviction.

2  A grant of parole on the life sentence would not have resulted in Mr. Burnett's release; rather, it would have permitted Mr. Burnett to commence service on his fifteen-year automobile larceny sentence. *See* Okla. Stat. tit. 57, § 332.7(H).

3  Subsequent to Mr. Burnett's offense, the frequency of parole hearings changed. Prior to Mr. Burnett's offense, reconsideration of parole occurred "one year from the month of denial, unless directed otherwise by majority vote" with the parole board having the authority to "set off reconsideration for a maximum of five years." *Henderson v. Scott*, 260 F.3d 1213, 1214 n.2 (10th Cir. 2001) (quoting Okla. Pardon & Parole Bd., Policy & Procedures Manual, Policy 004(I)(B)(1)(a) ). A 1999 statutory amendment, however, now precludes reconsideration of parole for at least three years from a denial of parole for any person convicted of a violent crime. Okla. Stat. tit. 57, § 332.7(D)(1) (West 1999). This three-year limitation on the reconsideration of a denial of parole remains in effect. Okla. Stat. tit. 57, § 332.7(D)(1).

4  At the time of her October 2013 report, Ms. Denton was Ms. Dunigan.

5  Mr. Burnett named all defendants in both their individual and official capacities.

6  Although the allegations in support of this claim focused primarily on the requirement that the Parole Board must now consider his offense of conviction and offense conduct, Mr. Burnett identified seven other changes in the parole process:

| | |
|---|---|
| | (1) he is no longer permitted to personally appear before the Parole Board; (2) he no longer can be transferred to a lower security prison facility; (3) victims are permitted to object to parole; (4) he has to prove that he has a job and a place to live upon release; (5) the Oklahoma Department of Corrections ("ODOC") no longer maintains records on inmate accomplishments; (6) the ODOC no longer conducts a "risk assessment" as part of the parole investigation report; and (7) parole hearings occur less frequently. |
| 7 | In the alternative, Mr. Burnett indicated the allegations in count three raised a state-law claim for intentional infliction of emotional distress. |
| 8 | The magistrate judge also faulted Mr. Burnett for not producing "evidence" in support of his *ex post facto* claim. ROA at 34–36. As the case was only at the pleadings stage, Mr. Burnett did not have an opportunity to present evidence, and the magistrate judge's statement on this point was clearly erroneous. Furthermore, although Mr. Burnett objected to the magistrate judge's conclusion on this point, the district court did not address this objection and adopted the magistrate judge's report and recommendation without modification and without considering any of Mr. Burnett's other objections. *See* 28 U.S.C. § 636 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). |
| 9 | Although Mr. Burnett's counsel focuses exclusively on the latter of these two Due Process Clause arguments, Mr. Burnett raised the former argument in his pro se opening brief. *See* Pro Se Opening Br. at 7 ("While actually being paroled is discretionary, prisoners do have a legal right to be *considered* for parole, and via a scheme that does not violate procedural and/or substantive due process."). Because counsel's brief is a supplemental opening brief, arguments raised in Mr. Burnett's pro se brief are properly before us. |
| 10 | Although counsel did not advance an argument relative to the dismissal of Mr. Burnett's Eighth Amendment claim, Mr. Burnett challenged the dismissal of this claim in his pro se opening brief. Pro Se Opening Br. at 3, 13. Accordingly, we consider the matter. |
| 11 | Although the dismissal of Mr. Burnett's complaint by the district court will be his third strike, this third strike does not preclude the granting of *in forma pauperis* status on appeal because the third strike will not ripen for purposes of § 1915(g) until the dismissal becomes final. *See Thompson v. Drug Enf't Admin.*, 492 F.3d 428, 432 (D.C. Cir. 2007) ("Although section 1915(g) nowhere expressly states that dismissals must be final to count as strikes, we think it fairly implied."); *see also Smith v. Veterans Admin.*, 636 F.3d 1306, 1314 (10th Cir. 2011) (discussing ripening of strike in terms of when time for appeal expired and judgment became final). |

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.