## CASE NO. 19-CV-310-HE

---

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

---

**ALLISON BEARD, et al.,**
**Plaintiff,**

v.

**DELYNN FUDGE, Executive Director, Oklahoma Pardon and Parole Board and in her individual capacity; JOE ALLBAUGH, Director, Oklahoma Department of Corrections and in his individual capacity,**
**Defendants.**

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Respectfully Submitted,

Debra K. Hampton, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Plaintiff

Ronald "Skip" Kelly, OBA # 4937
Two Broadway Executive Park
205 NW 63rd, Suite 150
Oklahoma City, OK 73116
(405) 235-1976
(405) 286-6316 (fax)
Attorney for Plaintiff

July 09, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

CASES...............................................................................................................iii

STATUTES ..........................................................................................................x

UNITED STATES CODE......................................................................................x

OTHER AUTHORITIES .......................................................................................x

RULES.................................................................................................................x

CONSTITUTIONAL PROVISIONS......................................................................x

STANDARD FOR DISMISSAL ...........................................................................2

PROPOSITION I...................................................................................................4

DEFENDANTS FUDGE AND ALLBAUGH IN THEIR OFFICIAL CAPACITIES ARE PROPER DEFENDANTS TO PLAINTIFFS' § 1983 CLAIMS.

PROPOSITION II ..................................................................................................6

THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' OKLAHOMA CONSTITUTIONAL CLAIMS BECAUSE THE COURT HAS SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS.

PROPOSITION III ...............................................................................................11

THE ROOKER-FELDMAN DOCTRINE DOES NOT PRECLUDE PLAINTIFFS' CLAIMS AND IS INSUFFICIENT TO BAR FEDERAL DETERMINATION AS THERE IS NO STATE COURT JUDGMENT SOUGHT FOR REVIEW.

PROPOSITION IV ......................................................................... 13

    THE POLITICAL QUESTION DOCTRINE DOES NOT PRECLUDE PLAINTIFFS' CLAIMS REGARDING OKLAHOMA'S TRUTH AND SENTENCING ACT AND SENTENCING MATRIX.

PROPOSITION V ........................................................................... 17

    PLAINTIFFS HAVE NOT FAILED TO EXHAUST ADMINISTRATIVE REMEDIES BECAUSE THERE ARE NO AVAILABLE REMEDIES. *ROSS V. BLAKE*, 136 S.CT. 1850 (2016)

PROPOSITION VI .......................................................................... 20

    PLAINTIFFS HAVE NOT FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

PROPOSITION VII......................................................................... 29

    PLAINTIFFS DISMISS INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANTS FUDGE AND ALLBAUGH AND AS ONLY OFFICIAL CAPACITY CLAIMS WERE STATED.

PROPOSITION VIII ....................................................................... 29

    PLAINTIFFS ARE ENTITLED TO DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF.

PROPOSITION XI........................................................................... 30

    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

PROPOSITION X ........................................................................... 31

    PLAINTIFFS CAN BRING A CLASS ACTION BECAUSE A PORTION OF THE CLAIMS EFFECT THE ENTIRE OFFENDER POPULATION.

CONCLUSION .............................................................................. 32

CERTIFICATE OF SERVICE........................................................... 33

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
 556 U.S. 662, 678 (2009) ........................................................................ 4

*BA MTG. CO., INC. v. Unisal Development, Inc.*,
 469 F. Supp. 1258 (D. Colo. 1979). .................................................... 25

*Baker v. Carr*,
 369 U.S. 186, 215 (1962) ................................................................. 13, 14

*Bank of Columbia v. Okely*,
 4 Wheat. 235, 244 (1819) ..................................................................... 16

*Barrios v. Haskell County Public Facilities Authority*;
*Foutch v. Turn Key Health*,
 2018 OK 90, 432 P.3d 233 ..................................................................... 8

*Battle v. Anderson*,
 564 F.2d 388 (10th Cir. 1977) ............................................................. 23

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544, 555 (2007) ....................................................................... 3

*Board of Regents of State Colleges v. Roth*,
 408 U.S. 564, 577 (1972) ..................................................................... 29

*Bosh v. Cherokee Building Authority*,
 2013 OK 9, 305 P.3d 994 .................................................................. 8, 10

*Boutwell v. Keating*,
 399 F.3d 1203, 1213-15 (10th Cir. 2005).......................................... 26

*Brokers' Choice of America v. NBC Universal*,
 861 F.3d 1081, 1104-05 (10th Cir. 2017)............................................. 4

*Brown, et al., v. Precythe*,
 Case No. 2:17-cv-04082-NKL, (W.D. of Missouri) ...................... 26, 27

*Campbell v. City of Spencer,*
    682 F.3d 1278, 1283 (10th Cir. 2012) ................................................................. 12

*Coleman v. Miller,*
    307 U.S. 433, 454-455 (1939) ............................................................................. 14

*Conley v. Gibson,*
    355 U.S. 41, 47 (1957) ........................................................................................ 3

*Connecticut Board of Pardons v. Dumschat,*
    452 U.S. 458, 465 (1981) .................................................................................... 29

*Daniels v. Williams,*
    474 U.S. 327, 331 (1986) .................................................................................... 16

*Davis v. Scherer,*
    468 U.S. 183 (1984) ............................................................................................. 5

*DeShaney v.Winnebago County Dept. of Social Servs.,*
    489 U.S. 189, 198-199 (1989) ............................................................................ 23

*Dillon v. Gloss,*
    256 U.S. 368 (1921) ........................................................................................... 14

*District of Columbia Court of Appeals v. Feldman,*
    460 U.S. 462 (1983) .................................................................................... 11, 12

*Dubbs v. Head Start, Inc.,*
    336 F.3d 1194, 1201 (10th Cir. 2003) .................................................................. 4

*Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.,*
    986 F. Supp. 2d 1249, 1258 (W.D. Okla. 2013) .................................................. 7

*Estelle v. Gamble,*
    429 U.S. 97, 102 (1976) ..................................................................................... 23

*Facio v. Jones,*
    929 F.2d 541, 544 (10th Cir. 1991) .................................................................... 29

*Farmer v. Brennan,*
    511 U.S. 825, 843 (1994) .............................................................................. 21, 22

*Field v. Clark*,
    143 U.S. 649, 672, 676-677 (1892) ........................................................ 14

*Foster v. Allbaugh*,
    No. CIV 17-051-JHP-KEW (E.D. Okla. Aug. 28, 2018) .................................... 28

*Foster v. Dovey*,
    TDC-15-3979 (D. Md. Apr. 27, 2018) .................................................... 27

*Foster v. Kupec*,
    No. 1841, at 6-7 (Md. Ct Spec. App. June 20, 2001) ............................ 27

*Gomes v. Wood*,
    451 F.3d 1122, 1134 (10th Cir. 2006) ................................................ 30

*Gomez v. State*,
    2007 OK CR 33, ¶ 15, 168 P.3d 1139 ........................................... 10, 11

*Gore v. State*,
    1923 OK CR 268, 218 P. 545, 547-48 (1923) ...................................... 10

*Graham v. Florida*,
    560 U.S. 48 (2010) .......................................................... passim

*Green v. Mansour*,
    474 U.S. 64 (1985) ................................................................ 30

*Griswold v. Connecticut*,
    381 U.S. 479 (1965) ............................................................... 16

*Guttman v. Khalsa*,
    446 F.3d 1027, 1031 (10th Cir. 2006) .............................................. 11

*Hafer v. Melo*,
    502 U.S. 21, 29-30 (1991) .......................................................... 5

*Hall v. Witteman*,
    584 F.3d 859, 864 (10th Cir. 2009) ................................................ 20

*Heck v. Humphrey*,
    512 U.S. 477, 480 (1994) ...................................................... 12, 20

*Heckler v. Chaney,*
   470 U.S. 821, 830 (1985). ..................................................................... 26

*Helling v. McKinney,*
   509 U.S. 25, 33, 34-35 (1993) ............................................................... 23

*Holt v. United States,*
   46 F.3d 1000, 1002 (10th Cir. 1995) ....................................................... 3

*Howlett ex rel. Howlett v. Rose,*
   496 U.S. 356, 376 (1990) ......................................................................... 7

*Hudson v. Palmer,*
   468 U.S. 517, 526-527 (1984) ............................................................... 23

*Hurtado v. California,*
   110 U.S. 516, 527 (1884) ...................................................................... 16

*In re Universal Service Fund Telephone Billing Practice Litigation,*
   619 F.3d 1188, 1219 (10th Cir. 2010) ................................................... 25

*Jackson v. McCollum,*
   Case No. 17-6137, (10th Cir. Jan. 18, 2018) ........................................ 28

*Leser v. Garnett,*
   258 U.S. 130, 137 (1922) ...................................................................... 14

*Lomax v. Warden,*
   741 A.2d 476,480-81 (Md. 1999) .......................................................... 27

*Luna v. State,*
   2016 OK CR 27, ¶ 21, 387 P. 3d 956, 963 ........................................... 26

*Marley v. Cannon,*
   1980 OK 147, 618 P.2d 401, 406-407 .................................................... 20

*Martinez v. California,*
   444 U.S. 277, 284, n. 8 (1980) ................................................................ 7

*Maryland Restorative Justice Initiative,*
   2017 WL 467731 at *27 .......................................................................... 27

*Miller v. Alabama*,
132 S.Ct. 2455, 2458, 2469 (2012) ............................................................. passim

*Miller v. Glanz*,
948 F.2d 1562, 1565 (10th Cir.1991) ........................................................ 4

*Monell v. New York City Dept. of Social Services*,
436 U.S. 658, 690, n. 55 (1978) ................................................................. 5

*Montgomery v. Louisiana*,
577 U.S. 460, 136 S.Ct. 718 (2016) ............................................................ passim

*Morrissey v. Brewer*,
408 U.S. 471, 481 (1972) ........................................................................... 28

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
18 How. 272, 277 (1856) ........................................................................... 16

*Muskogee (Creek) Nation v. Pruitt*,
669 F.3d 1159, 1166 (10th Cir. 2012) ....................................................... 5

*New England Mut. Life Ins. Co. v. Anderson*,
888 F.2d 646, 650 (10th Cir. 1989) ........................................................... 21, 22

*O'Shea v. Littleton*,
414 U.S. 488, 94 S.Ct. 669 (1974) ............................................................ 30

*Parker v. Allbaugh*,
No. 18-CV-0232-JED-FHM (N.D. Okla. Oct. 22, 2018) ............................ 28

*Patsy v. Board of Regents of Fla.*,
457 U.S. 496, 501 (1982) ........................................................................... 20

*Pearson v. Callahan*,
555 U.S. 223, 231 (2009) ........................................................................... 30

*Phillips v. Williams*,
1980 OK 25, 608 P.2d 1131 ....................................................................... 26

*Phillips v. Wiseman*,
1993 OK 100, 857 P.2d 50 .......................................................................... 7

vii

*Reiter v. Cooper*,
     507 U.S. 258, 269 (1993) ................................................................. 17

*Rhodes v. Chapman*,
     452 U.S. 337, 346 (1981) ................................................................. 22

*Richardson v. McKnight*,
     521 U.S. 399 (1997) ........................................................................ 30

*Rochin v. California*,
     342 U.S. 165 (1952) ........................................................................ 17

*Rooker v. Fidelity Trust Co.*,
     263 U.S. 413 (1923) ................................................................... 11, 12

*Roper v. Simmons*,
     543 U.S. 551, 560 (2005) ................................................................... 9

*Ross v. Blake*,
     136 S.Ct. 1850, 1855 (2016) .................................................. 17, 18, 19

*Ruark v. Solano*,
     928 F.2d 947, 950 (10th Cir.1991) ...................................................... 5

*Ruiz v. McDonnell*,
     299 F.3d 1173, 1180 (10th Cir. 2002) .................................................. 2

*Savage v. Fallin*,
     No. 16-6083. (10th Cir. 2016) ........................................................... 22

*Savage v. Fallin*,
     No. CIV-15-1194-HE (W.D. Okla. Mar. 30, 2018) ........................... 6, 17

*Scheuer v. Rhodes*,
     416 U.S. 232, 236 (1974) ................................................................ 3, 5

*Shabazz v. Keating*,
     1999 OK 26, 977 P.2d 1089 ............................................................. 26

*Shirley v. Chestnut*,
     603 F.2d 805, 807 (10th Cir. 1979) .............................................. 25, 26

*Smith v. Robinson,*
    468 U.S. 992, 1014, n.17 (1984) ........................................................ 17

*Stidham v. Peace Officer Standards and Training,*
    265 F.3d 1144, 1156 (10th Cir. 2001) ................................................ 5

*Sutton v. Utah State Sch. for the Deaf & Blind,*
    173 F.3d 1226, 1236 (10th Cir.1999) ................................................ 4

*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506, 508, n. 1 (2002) ........................................................... 3

*Tiemann v. Tul-Center, Inc.,*
    18 F.3d 851, 853 (10th Cir. 1994) ................................................. 6, 7

*Tinker Inv. & Mortgage Corp. v. City of Midwest City,*
    1994 OK 41, 873 P.2d 1029 ............................................................... 19

*United States v. Sprague,*
    282 U.S. 716, 732 (1931) .................................................................. 14

*Washington v. Barry,*
    2002 OK 45, 55 P.3d 1036 .................................................................. 8

*Washington v. Harper,*
    494 U.S. 210, 225 (1990) .................................................................. 23

*Waste Connections, Inc, v. Okla. Dept. of Environmental Quality,*
    2002 OK 94, 61 P.3d 219. ................................................................. 19

*Wilkinson v. Austin,*
    545 U.S. 209, 221 (2005) .................................................................. 28

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58, 71 (1989) ....................................................................... 5

*Willbourn v. City of Tulsa,*
    1986 OK 44, 721 P.2d 803 .................................................................. 7

*Young v. Allbaugh,*
    No. CIV 18-028-JHP-KEW (E.D. Okla. Oct. 23, 2018)........................ 28

ix

## STATUTES

57 O.S.2018 § 332.7 ................................................................................................. 14
75 O.S. § 306 (D) ................................................................................................... 19

## UNITED STATES CODE

28 U.S.C. § 1367 ..................................................................................................... 7
42 U.S.C. § 1983 ......................................................................................... 2, 4, 7, 20
42 U.S.C. § 1997e(a) .............................................................................................. 18

## OTHER AUTHORITIES

24 Harv. L. Rev. 366, 368 (1911) ......................................................................... 16

## RULES

Fed. R. Civ. P.   8(a)(2) .......................................................................................... 3
Fed. R. Civ. P. 12(b)(1) ........................................................................................... 2
Fed. R. Civ. P. 12(b)(6) ........................................................................................... 3
Fed. R. Civ. P. 23 ................................................................................................... 31
Fed. R. Civ. P. 25 ..................................................................................................... 1

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend VIII ................................................................................. passim
U.S. Const. amend XIV ................................................................................. passim
Okla. Const. art.  I, § 1 ............................................................................................ 9
Okla. Const. art. II, § 7 ........................................................................................ 7, 8
Okla. Const. art. II, § 9 ...................................................................................... 8, 10
Okla. Const. art. II, § 30 ......................................................................................... 8
Okla. Const. art. V, § 1 ......................................................................................... 16
Okla. Const. art. VI, § 11 ...................................................................................... 16

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| (1) | ALLISON BEARD, et al., | ) | |
| | Plaintiffs, | ) | |
| | v. | ) | Case No.: 19-cv-310-HE |
| | | ) | |
| (1) | DELYNN FUDGE[1], Executive Director, | ) | |
| | Oklahoma Pardon and Parole Board | ) | |
| | and in her individual capacity, et at., | ) | |
| | | ) | |
| (2) | JOE ALLBAUGH[2], Director, | ) | |
| | Oklahoma Department of Corrections, | ) | |
| | and in his individual capacity, | ) | |
| | Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS FUDGE AND ALLBAUGH'S
## MOTION TO DISMISS [DOC. NO. 5] WITH BRIEF IN SUPPORT

COMES NOW, the Plaintiffs, through their attorney, Ronald "Skip" Kelly, and Co-Counsel, Debra K. Hampton, and submits the Plaintiffs' Response to Defendants' Motion to Dismiss with Brief in Support. In support of this Response, Plaintiffs submit the following.

### STATEMENT OF THE CASE

Plaintiffs are inmates in the custody of the Oklahoma Department of Corrections serving life sentences for committing various violent crimes — non homicide and homicide

---

[1] Melinda Romero, Interim Executive Director has been substituted for Fudge regarding the remaining official capacity claims pursuant to Fed. R. Civ. P. 25.

[2] Scott Crow, Interim Director, has been substituted for Allbaugh regarding the remaining official capacity claims pursuant to Fed. R. Civ. P. 25.

offenses. On April 4, 2019, Plaintiffs commenced the instant action against these Defendants in their official and individual capacities under 42 U.S.C. § 1983 alleging violations of their Eighth and Fourteenth Amendment rights, also alleging that the Defendant Melinda Romero, Interim Executive Director's actions violate the Oklahoma Constitution. Plaintiffs stipulate to dismissing individual capacity claims against Defendants because they are not seeking damages.

Specifically, Plaintiffs allege the current parole process violates their constitutional rights and that the Oklahoma Department of Corrections' ("ODOC") overcrowding and inadequate staffing subjects these Plaintiffs to deliberate indifference because of imminently dangerous conditions. Plaintiffs seek a declaratory judgment that the current parole process is unconstitutional and an injunction requiring these Defendants to provide parole proceedings that "afford a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." The Defendants admit Plaintiffs are also seeking a declaratory judgement against Defendants for the Oklahoma Legislature's reenactment of the Oklahoma Truth and Sentencing Act and sentencing matrix. [Doc. No. 5 at 13] For reasons set forth below, Plaintiffs state the Defendants Motion to Dismiss [Doc. No. 5] should be overruled concerning official capacity claims.

## STANDARD FOR DISMISSAL

The Defendants have asserted defenses under Fed. R. Civ. P. 12(b)(1) and (6). Defendants assert Fed. R. Civ. P. 12(b)(1) lack of subject-matter jurisdiction making a facial attack on the sufficiency of the allegations contained in the Petition, and thus, all

well-pleaded factual allegations are accepted as true. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10ᵗʰ Cir. 2002) *Holt v. United States*, 46 F.3d 1000, 1002 (10ᵗʰ Cir. 1995). Plaintiffs state this Court does have subject matter jurisdiction over federal constitutional claims. Defendants do not contest supplemental jurisdiction over state law claims. Defendants have not met its burden of dismissal for lack of subject matter jurisdiction.

The Defendants also plead under Fed. R. Civ. P. 12(b)(6) failure to state a claim upon which relief can be granted. Plaintiffs have plead a sufficient factual basis entitling them to relief. A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *Conley v. Gibson*, 355 U.S. 41 (1957). Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley at* 47). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp.*, supra, at 555-556 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 570. Conclusory allegations are insufficient to state a facially plausible claim. *Id.* at 557. A claim is facially plausible "when the plaintiff pleads factual content that allows the court

3

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, dismissal under Rule 12(b)(6) is only appropriate "if the complaint alone is legally insufficient." *Brokers' Choice of America v. NBC Universal*, 861 F.3d 1081, 1104-05 (10th Cir. 2017).

The Plaintiffs have sufficiently pled a factual basis of their claims entitling them to relief. Plaintiffs' claims establish a violation of the Eighth and Fourteenth Amendments of the United States Constitution. The Plaintiffs states that their claims are supported by evidence and legally sufficient to state a claim which relief can be granted. See *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003); also, *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). In addition, a "12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). Plaintiffs respectfully requests this Court deny Defendants' Motion to Dismiss.  [Doc. No. 5]

## PROPOSITION I

### DEFENDANTS FUDGE AND ALLBAUGH IN THEIR OFFICIAL CAPACITIES ARE PROPER DEFENDANTS TO PLAINTIFFS' § 1983 CLAIMS.

The Defendants argued "[b]ecause the State of Oklahoma and its agencies are not "persons" subject to suit under 42 U.S.C. § 1983, an action seeking damages for violations of constitutional rights cannot be maintained against Defendants." [Doc. No. 5 at 4] The Defendants have construed that Plaintiffs' are seeking damages against them contrary to

the claims for relief that sought no damages and only declaratory judgment and injunctions. [Doc. No. 1 at 45]. Official capacity claims asserted against the Defendants are proper under § 1983 where the Eleventh Amendment limits official capacity claims against state officials to prospective injunctive relief. *Hafer v. Melo*, 502 U.S. 21, 29-30 (1991); *Scheuer, supra,* at 237 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). Defendants aver that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); see also *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir.1991). The Supreme Court in *Will* addressed official capacity claims stating: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, at 71 n. 10 (citing *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001)). The Tenth Circuit has also determined a "plaintiff may "bring suit against individual state officers in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muskogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

In *Savage v. Fallin*, No. CIV-15-1194-HE (W.D. Okla. Mar. 30, 2018) this Court determined an "ongoing constitutional violation has been alleged which might warrant an award of injunctive relief and Allbaugh [now Crow], as an official with the authority to implement that relief, may be sued in his official capacity on that basis." Plaintiffs argue Defendants' Proposition I presents an insufficient defense that is without merit and must be denied.

## PROPOSITION II

### THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' OKLAHOMA CONSTITUTIONAL CLAIMS BECAUSE THE COURT HAS SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS.

The Defendants argue this Court lacks subject matter jurisdiction over Plaintiffs' Oklahoma Constitutional claims stating the Oklahoma Governmental Tort Claims Act ("GTCA") provides the exclusive remedy by which an injured plaintiff may recover against a governmental entity for the alleged torts of its agents and its employees. However, Defendants' argument in Proposition II should be denied because Plaintiffs have only alleged a violation of the Oklahoma Constitution against Defendant Melinda Romero, Interim Executive Director of the Pardon and Parole Board that sought no recovery of damages.

The Defendants argue that they are immune under the GTCA but because the Plaintiffs are not seeking to recover damages from the Governmental entity, the GTCA does not present a sufficient bar to Oklahoma Constitutional Claims. In *Tiemann v. Tul-*

*Center, Inc.*, 18 F.3d 851, 853 (10th Cir. 1994), the Tenth Circuit addressed the district court's grant of summary judgment to all defendants holding: ([t]he District Court erred in concluding that the Oklahoma Governmental Tort Claims Act immunizes defendants from § 1983 liability). "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 376 (1990) (quoting *Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980)) (further citation omitted).

A § 1983 claim may be available, even though a state remedy is foreclosed by the Oklahoma Governmental Tort Claims Act. See *Willbourn v. City of Tulsa*, 1986 OK 44, 721 P.2d 803, 805; see also, *Phillips v. Wiseman*, 1993 OK 100, 857 P.2d 50, 52 ("[T]he [Oklahoma] Governmental Tort Claims Act and 42 U.S.C. § 1983 provide a 'double-barreled system,' and ... escaping liability under one does not necessarily mean that a party also escapes liability under the other."). *Id.* The Oklahoma Supreme Court has recognized that Okla. Const. art 2, Sections 7 and 9 of the Oklahoma Constitution mirror the Fourteenth and Eighth Amendments to the U.S. Constitution, respectively, a violation of these Oklahoma state constitutional rights gives rise to a § 1983 claim. *Phillips v. Wiseman*, 1993 OK 100, ¶ 9, 857 P.2d 50, 53; *Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 986 F. Supp. 2d 1249, 1258 (W.D. Okla. 2013) ("It is well settled that [a] § 1983 claim may be available, even though a state remedy is foreclosed by the Oklahoma Governmental Tort Claims Act." (quoting *Tiemann*, 18 F.3d at 853)). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over state law claims asserted.

Defendants argue that "Plaintiffs generally allege violations of the OKLA. CONST., [sic] art. II §§ 7, 9 – a cause of action carved out by *Bosh v. Cherokee Building Authority*, 2013 OK 9, 305 P.3d 994." [Doc. No. 5 at 17] Defendants admit that a cause of action was carved out by *Bosh* for violations of the Oklahoma Constitution. Further, Defendants argued "in asserting this cause of action, Plaintiffs are asking this Court for an expansive reading of *Bosh* to extend the right of actions for claims of the Oklahoma Constitution that are now inconsistent with the most recent Oklahoma Supreme Court ruling in *Barrios v. Haskell County Public Facilities Authority*; *Foutch v. Turn Key Health*, 2018 OK 90, 432 P.3d 233." [Doc. No. 5 at 17]. Plaintiffs are not asking this Court for an expansive reading of *Bosh* because it is established that a cause of action under Okla. Const. art. II, § 9 already exists in Oklahoma law.  Plaintiffs argue because of "Defendant PPB's actions, Plaintiffs have been and continue to be denied a realistic and meaningful opportunity for release, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and in violation of the Okla. Const. art. II, §§ 7, 9." [Doc. No. 1 at 10].

Plaintiff argues the determination in *Bosh* at ¶ 22, where the Court held "Okla. Const. art. II, § 30 applies to citizens who are seized -- arrestees and pre-incarcerated detainees. In *Washington v. Barry,* 2002 OK 45, 55 P.3d 1036, we declared that, notwithstanding the provision of the OGTCA, a private action for excessive force exists pursuant to the Okla. Const. art. II, § 9 for incarcerated persons." Plaintiffs argue regardless of the alleged allegation under Okla. Const. art II, § 9, it has been recognized to create a cause of action for Cruel and Unusual Punishment. Plaintiffs state because the Eighth

8

Amendment prohibits excessive sentences of LWOP — whether de jure or de facto — to a class of offenders, the Oklahoma Constitution is also affected. Okla. Const. art. I, § 1 provides "[T]he State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." It is hard to fathom there is not an impact on the State Constitution regarding juvenile sentences. Plaintiffs reasonably believe that Okla. Const. art. II, § 9 would apply as having the same force as the Eighth Amendment.

Importantly, [t]he bar in the U.S. Constitution's Eighth Amendment against cruel and unusual punishment prohibits subjecting an individual "to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). In 2010, SCOTUS declared such sentences unconstitutional for those under 18 at the time of their crimes. *Graham v. Florida*, 560 U.S. 48 (2010) (nonhomicide). In 2012, SCOTUS extended the *Graham* ruling to homicide in *Miller v. Alabama*, 132 S.Ct. 2455, 2458, 2469 (2012) noting "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." (citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005). Plaintiffs argue this is more than conclusory allegations because the Plaintiffs are serving de jure and de facto LWOP sentences that exceed their life expectancy and because Life without parole for a juvenile offender has been determined to be an Eighth Amendment violation absent a determination by the sentencer that the juvenile is permanently incorrigible.

The reading in *Bosh* at ¶ 23, determined the "OGTCA cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens. To do so would not only fail to conform to established precedent which refused to construe the OGTCA as providing blanket immunity, but would also render the Constitutional protections afforded the citizens of this State as ineffective, and a nullity." *Id.* Plaintiffs state that if this Court were to determine the State Constitutional claims were barred by the GTCA, the Federal Constitutional claims survive any analysis and Plaintiffs will voluntarily dismiss any claim related to the Oklahoma Constitution. Plaintiffs state that if Okla. Const. art. II, § 9 is inapplicable to their claims, that State law has worked an arbitrary repeal of that amendment and dissolving the State from the Federal Union in violation of the State Constitution.

In *Gomez v. State*, 2007 OK CR 33, ¶ 15, 168 P.3d 1139, the Oklahoma Court of Criminal Appeals held their determination in *Gore v. State*, 1923 OK CR 268, 218 P. 545, 547-48 (1923), explained that if construction of federal constitutional provisions made by the United States Supreme Court appears to rest on "sound principles," the decisions of this Court construing equivalent provisions of the Oklahoma Constitution should harmonize with those of the United States Supreme Court construing the Federal Constitution. The stated basis for the rule was to promote uniformity of judicial decisions. *Id.* This determination is reinforced by Okla. Const. art. I, § 1 which declares that "[t]he State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." With this declaration, the Framers of our

10

Constitution expressed a preference for a harmonious construction of the Oklahoma Constitution with the Constitution of the United States where possible. *Gomez* at ¶ 15.

Plaintiffs argue this action materially differs from all other state law cases argued by Defendants. Therefore, this Court has subject matter jurisdiction over any of Plaintiffs' Oklahoma Constitutional claims.

**PROPOSITION III**

**THE ROOKER-FELDMAN DOCTRINE DOES NOT PRECLUDE PLAINTIFFS' CLAIMS AND IS INSUFFICIENT TO BAR FEDERAL DETERMINATION AS THERE IS NO STATE COURT JUDGMENT SOUGHT FOR REVIEW.**

The Defendants argument that the *Rooker-Feldman[3]*, doctrine precludes Plaintiff's claims are without merit and must be denied. Plaintiffs are not challenging any state court judgment which is a requisite to apply *Rooker–Feldman* as admitted by Defendants stating: "the *Rooker–Feldman* doctrine provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments. *See Guttman v. Khalsa,* 446 F.3d 1027, 1031 (10th Cir. 2006)." [Doc. No. 5 at 7]

The Plaintiffs are challenging the Oklahoma Pardon and Parole Board's procedures of not providing a meaningful and realistic opportunity to juvenile offenders based upon demonstrated maturity and rehabilitation and thus not be barred by the *Rooker–Feldman* doctrine. Plaintiffs argued in the Complaint that the goal is not to challenge the fact or

---

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)

duration of Plaintiffs' confinement. Instead, Plaintiffs seek a declaration that the current parole process afforded to individuals serving de facto LWOP sentences are unconstitutional, and an affirmative injunction requiring Defendant PPB to provide proceedings that afford a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation for youthful offenders serving unconstitutional de facto LWOP sentences. [Doc. No. 1, ¶ 13 at 11].

Plaintiffs argue that their sentences have been transformed into LWOP by the PPB's procedures. There is no challenge to a State Court judgment in this matter that addresses the inadequate parole process being challenged so the Plaintiffs are not State Court losers under the *Rooker–Feldman* doctrine. Plaintiffs admit that any attack on the sentence itself would be barred by *Heck v. Humphrey*, 512 U. S. 477 (1994).

The Defendants discuss "[t]he thrust of the *Rooker-Feldman* doctrine is that claims barred by its application are those complaining that the state court wrongfully entered its judgment. *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012)." Thus, Plaintiffs' challenge to the sentencing determinations by the criminal court lies primarily with the Oklahoma Court of Criminal Appeals and, thereafter, the United States Supreme Court." [Doc. No. 5 at 4]. Defendants argument about *Rooker–Feldman* doctrine establishes that it is inapplicable to Plaintiffs' challenge to the Defendant PPB's procedures. The Defendants have presented an insufficient defense failing to meet its burden that Plaintiffs attack any State Court judgment.

12

## PROPOSITION IV

**THE POLITICAL QUESTION DOCTRINE DOES NOT PRECLUDE PLAINTIFFS' CLAIMS REGARDING OKLAHOMA'S TRUTH AND SENTENCING ACT AND SENTENCING MATRIX.**

Defendants argue that Plaintiffs claims about Oklahoma's Legislative decision to "revive and reenact" the Oklahoma's Truth in Sentencing Act and Sentencing Matrix are precluded by the political question doctrine. The political question doctrine, a tool for maintenance of governmental order, will not be so applied as to promote only disorder. *Baker v. Carr*, 369 U.S. 186, 215 (1962). Plaintiffs are seeking a declaratory judgment that the sentencing matrix became effective on November 1, 2018, thus becoming fully effective. Defendants argue this "request is a nonjusticiable political question that this Court should dismiss." Defendants argument is misplaced; the Defendants' concession of the revival of the truth and sentencing act and sentencing matrix can only be construed that the intent of the legislature in doing so was to promote harmony and order. The Defendants concede that Oklahoma's Legislature reenacted the Oklahoma Truth and Sentencing Act and Sentencing Matrix. [Doc. No. 5 at 13, 19]

Plaintiffs argued that because Oklahoma's Legislative decision to "revive and reenact" the Oklahoma's Truth in Sentencing Act and Sentencing Matrix defined the term of a life sentence as a number between 18-60 years. The Defendants do not dispute Plaintiffs claims only that consideration of Plaintiffs' claims are precluded by the political question doctrine. The Defendants reliance on this doctrine is misplaced and this claim should be overruled.

13

While Defendants argue this is a nonjusticiable political question. "In determining whether a question falls within [the political question] category, the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations." *Coleman v. Miller*, 307 U.S. 433, 454-455 (1939). The non-justiciability of a political question is primarily a function of the separation of powers.   However, because the statutory provision 57 O.S.2018 § 332.7, became effective November 21, 2018, there is no violation of the separation of powers thus the political question doctrine cannot bar a declaratory judgment. Considering the Defendants concede that the sentencing matrix was reenacted this Court must analyze representative cases and to infer from them the analytical threads that make up the political question doctrine to determine applicability, those threads are: 1) Foreign relations; 2) Dates of duration of hostilities; 3) Validity of enactments; and 4) The status of Indian tribes. Plaintiffs discuss the thread under [v]alidity of enactments from the Supreme Court's decision in *Baker* at 214.

> In *Coleman v. Miller*, supra, this Court held that the questions of how long a proposed amendment to the Federal Constitution remained open to ratification, and what effect a prior rejection had on a subsequent ratification, were committed to congressional resolution and involved criteria of decision that necessarily escaped the judicial grasp. *Dillon v. Gloss*, 256 U.S. 368 (1921). See also *United States v. Sprague*, 282 U.S. 716, 732 (1931). Similar considerations apply to the ***enacting process***: "The respect due to coequal and independent departments," and the need for finality and certainty about the status of a statute contribute to judicial reluctance to inquire whether, as passed, it complied with all requisite formalities. *Field v. Clark*, 143 U. S. 649, 672, 676-677 (1892); see *Leser v. Garnett*, 258 U.S. 130, 137 (1922) But it is not true that courts will never delve into a legislature's records upon such a quest: If the enrolled statute lacks an effective date, a court will not

14

hesitate to seek it in the legislative journals in order to preserve the enactment. *Gardner v. The Collector*, 6 Wall. 499. [sic] The political question doctrine, a tool for maintenance of governmental order, will not be so applied as to promote only disorder.

Plaintiffs argue that the political question doctrine cannot preclude judicial determination. If this doctrine is applied to a meritorious argument of the Plaintiffs, it would promote disorder and contribute to an ongoing constitutional violation within the State of Oklahoma and the ODOC. Defendant Crow, in his official capacity gives this Court jurisdiction to decide the claim on the merit.

Plaintiffs propose that an effective retroactive date upon the sentencing matrix or implementation thereof in a declaratory judgment would have a great effect on the entire offender population. Plaintiffs have argued Oklahoma's discretionary parole system is inadequate to meet the Constitutional demands under the Fourteenth Amendment. Plaintiffs state a determination on the effective date of the sentencing matrix and being retroactively applied in determining sentences would moot the Plaintiffs' constitutional claims against Defendant Romero and allowing the State to continue a discretionary parole system that is a meaningless ritual.

Plaintiffs argue the ODOC will also be substantially impacted in offender population and reducing the number of offenders to moot Eighth Amendment claims against Defendant Crow. Oklahoma is in a Crisis, a State of Emergency with the ODOC. Oklahoma's offender population has reached number 1 in the world and does not have room to house all offenders that have been sentenced to a term of imprisonment.

The Defendants argue that Plaintiffs' request for declaratory judgment "is a clear voyage into political territory." [Doc. 5 at 20] Defendants argue that under "Oklahoma Const., art. VI, § 11, and art. V, § 1, show that the right to make and pass laws exists solely within the Legislature and the Executive, not the judiciary." *Id.* The Defendants have stipulated that the legislature reenacted and revived by reference Oklahoma's Truth and Sentencing Act and Sentencing Matrix. Because of the legislature's actions, it clearly does not cross the line into a separation of powers issue with an admission from the Defendants that the statute was reenacted. This Court should find that the Complaint's request seeking a declaratory judgement regarding Oklahoma Legislators' enactment of the Oklahoma Truth and Sentencing Act is appropriate for judicial review and not precluded under the political question doctrine. Plaintiffs respectfully request that this Court overrule Defendants Motion to Dismiss and find its claim is without merit.

The Doctrine of Due Process of Law Before the Civil War, 24 Harv. L. Rev. 366, 368 (1911), was "intended to secure the individual from the arbitrary exercise of the powers of government," *Hurtado v. California*, 110 U.S. 516, 527 (1884) (quoting *Bank of Columbia v. Okely*, 4 Wheat. 235, 244 (1819)) Due process was designed to prevent governmental power from being "used for purposes of oppression," *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 277 (1856), *Daniels v. Williams,* 474 U.S. 327, 331 (1986). While due process protection in the substantive sense limits what the government may do in both its legislative *Griswold v. Connecticut*, 381 U.S. 479 (1965), and its executive capacities *Rochin v. California*, 342 U.S. 165 (1952), criteria to identify

16

what is fatally arbitrary differ depending on whether legislation or a specific act of a governmental officer is at issue. Plaintiffs have identified a magnitude of constitutional violations with the ODOC that have been ongoing since at least 1972.

## PROPOSITION V

**PLAINTIFFS HAVE NOT FAILED TO EXHAUST ADMINISTRATIVE REMEDIES BECAUSE THERE ARE NO AVAILABLE REMEDIES. *ROSS V. BLAKE*, 136 S.CT. 1850 (2016)**

Defendants have presented an insufficient defense in this matter arguing that Plaintiffs have failed to exhaust administrative remedies. Defendants recognize that Plaintiffs claim that exhaustion on the issues of overcrowding and understaffing would be futile because Defendants "have no power to decree…relief." [Doc. 5 at 21]. Plaintiffs argued the exhaustion doctrine is inapplicable to the Plaintiffs' claims in their entirety because neither Defendant has "no power to decree ……. relief." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). Plaintiffs need not exhaust administrative remedies where doing so would otherwise be futile or inadequate. See *Smith v. Robinson*, 468 U.S. 992, 1014, n.17 (1984) (citing cases); see also 121 Cong. Rec. 37416 (1975) (remarks of Sen. Williams) ("[E]xhaustion . . . should not be required . . . in cases where such exhaustion would be futile either as a legal or practical matter"). As a legal matter, any issue raised is a non grievable issue according to ODOC.

Plaintiffs argued there are no available remedies for overcrowding and understaffing in their Complaint and reinforce their position with an Exhibit filed in *Savage v. Fallin*, No. CIV-15-1194-HE (W.D. Okla. Mar. 30, 2018). [Doc. No. 61-23 at 0579] See attached

17

[Exhibit 1] The answer in this exhibit states:

> Not an issue that is grievable to the Oklahoma Department of Corrections (i.e., involves private prison, misconduct, pending litigation; not within or under the authority and control of the Oklahoma Department of Corrections; no remedy is allowed).

In *Ross v. Blake*, 136 S.Ct. 1850, 1855 (2016), the Supreme Court held "[a] prisoner need not exhaust remedies if they are not "available." Under the PLRA, a prisoner need exhaust only "available" administrative remedies. *Ross,* at 1856. Defendants admit "[p]ursuant to the PLRA, '[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are ***available*** are exhausted.' 42 U.S.C. § 1997e(a)." [Doc. No. 5 at 20] The Court in *Ross* finds the exhaustion requirement hinges on the "availab[ility]" of administrative remedies…." *Ross*, at 1858-1859. The Court stated:

> As we explained in *Booth*, the ordinary meaning of the word "available" is "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" 532 U.S., at 737-738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993)); see also Random House Dictionary of the English Language 142 (2d ed. 1987) ("suitable or ready for use"); 1 Oxford English Dictionary 812 (2d ed. 1989) ("capable of being made use of, at one's disposal, within one's reach"); Black's Law Dictionary 135 (6th ed. 1990) ("useable"; "present or ready for immediate use"). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.

The only limit to § 1997e(a)'s mandate is determined from its text that "[a]n inmate need exhaust only such administrative remedies as are 'available'." *Ross*, at 1862. Plaintiffs

18

state that Defendants' claims are without merit and must be denied.

### *Melinda Romero*, Interim Executive Director

The PPB does not have a grievance procedure and does not address conditions of confinement; therefore, exhaustion of any remedies is unavailable. Plaintiffs argue that under a statutory scheme in State law pursuant to 75 O.S. § 306 (A-D) of the Administrative Procedures Act (APA) are clear about exhaustion of remedies provided by 75 O.S. § 306 (D) which states:

> D. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question. See *Waste Connections, Inc, v. Oklahoma Department of Environmental Quality*, 2002 OK 94, 61 P.3d 219.

However, Plaintiffs cannot exhaust any claims raised against the Defendant PPB because there are no available remedies at law. Plaintiffs address the Defendants' claims regarding the GTCA as previously asserted by Defendants. The GTCA does not preclude an action being brought in State or Federal Court seeking a declaratory judgment. Plaintiffs argue that § 306 (D) provides a statutory exemption of exhaustion of remedies.

The Oklahoma Supreme Court determined in *Waste Connections, Inc, v. Oklahoma Department of Environmental Quality*, 2002 OK 94, ¶ 8, 61 P.3d 219, "the exhaustion requirement is discretionary with the court and may be excused if the administrative remedy is unavailable, ineffective or would have been futile to purse. *Tinker Inv. & Mortgage Corp. v. City of Midwest City*, 1994 OK 41, 873 P.2d 1029. When an administrative remedy is unavailable, ineffective or futile to pursue, the policy

19

justifications for invoking the exhaustion of administrative remedies doctrine are no longer

compelling. *Waste Connections, Inc., supra*.

An exception to the exhaustion requirement may be available where a challenge is

made to the power of the agency to act at all under the statutory scheme it is charged with

administering. *Marley v. Cannon*, 1980 OK 147, 618 P.2d 401, 406-407. Therefore, the

lack of authority to decree relief is sufficient to preclude exhaustion of remedies because

there are no remedies available.

**PROPOSITION VI**

**PLAINTIFFS HAVE NOT FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

The Civil Rights Act of 1871, 42 U.S.C. § 1983, after all, guarantees "a federal

forum for claims of unconstitutional treatment at the hands of state officials," *Heck v.

Humphrey*, 512 U.S. at 480 (quoting *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 501

(1982)). To assert a claim under 42 U.S.C. § 1983, a plaintiff must show as a threshold

matter (1) that a right secured by the Constitution and laws of the United States was violated

and (2) that a person acting under color of state law deprived the plaintiff of the right. *Hall

v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). However, there is no personal participation

required in official capacity claims.

Plaintiffs state that Fed. R. Civ. P. 8 establish general rules of pleading. Specifically

Fed. R. Civ. P. 8(a) provides "[a] pleading that states a claim for relief must contain: (1) a

short and plain statement of the grounds for the court's jurisdiction, unless the court already

20

has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

### A.    Eighth Amendment Violations; Official Capacity Claims

The Defendants admit that Plaintiffs allege that Defendant Allbaugh (now Crow) violated their Eighth Amendment rights because the Oklahoma prisons are understaffed and overcrowded, allegedly creating dangerous living conditions. [Doc. No. 5 at 24]. Dangerous living conditions due to overcrowded and understaffed prisons are sufficient to state Eighth Amendment claims because these claims are an automatic unconstitutional denial of their health and safety needs.

To state an Eighth Amendment claim, a plaintiff must allege facts showing that the officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) To prevail on such a claim there must be a "substantial risk of serious harm," an "objectively intolerable risk of harm" that prevents prison officials from pleading they were "subjectively blameless for purposes of the Eighth Amendment." *Farmer* at 842, 846. Defendants argue "[i]n support of these allegations, Plaintiffs cite to various news articles discussing ODOC prison conditions. [Doc. 1, pp. 32-43]." While the Defendant argues that these articles are inadmissible as evidence pursuant to *New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989), the Plaintiffs have satisfied the subjective element of the Eighth Amendment. Where the subjective element may be satisfied by

21

showing that problems were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past") See *Farmer*, at 842

This Court in *Savage v. Fallin*, No. 16-6083. (10th Cir. 2016), addressed statements cited by Savage and ruled in his favor holding:

> We reach the opposite conclusion as to Warden Bryant and DOC Director Patton. Savage cited statements made by Patton noting that prison understaffing has created dangerous situations in Oklahoma. He also claims that Patton personally made the decision to transfer inmates from county jails to DOC custody, causing overcrowding at JCCC. As to Bryant, Savage alleges that he has failed to appropriately discipline inmates and cites to public statements from the previous JCCC warden decrying understaffing at the facility. See *Farmer*, 511 U.S. at 842 (subjective element may be satisfied by showing that problems were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past"). Given that deliberate indifference may be demonstrated through "circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," *Id*. We conclude Savage has satisfied his initial pleading burden as to the subjective prong.

Plaintiffs argue "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Defendants argue "Plaintiffs do not cite any injury they sustained that is directly attributable to Defendants Allbaugh or Fudge". [Doc. No. 5 at 24] Plaintiffs state that due process does not require a prisoner seeking "a remedy for unsafe conditions [to] await a tragic event [such as an] actual assault before obtaining relief." *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993).

22

To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must be "sure or very likely to cause serious illness and needless suffering," and cause "sufficiently imminent dangers." *Helling*, *supra*. The Plaintiffs argued in their Complaint, officials must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). See *Helling*, *supra,* at 33, 34-35; *Washington v. Harper*, 494 U.S. 210, 225 (1990); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976); Cf. *DeShaney v.Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 198-199 (1989). The Defendants' arguments that Plaintiffs failed to state a claim under the Eighth Amendment is wholly frivolous and without merit and must be denied.

Defendants argue "[i]nstead of articulating any specific injury sustained as a result of overcrowding and understaffing, Plaintiffs rely upon *Battle v. Anderson*, 564 F.2d 388 (10th Cir. 1977), a case distinguishable from the vague and broad facts presented in their Complaint." [Doc. No. 5 at 24] Defendants support the Plaintiffs Eighth Amendment claims that are longstanding, pervasive and well-documented. In *Battle*, the Court found "various and sundry physical and environmental conditions existing throughout the system which were offensive and substandard." *Id.* The Court further noted "overwhelming" evidence of "existing environmental health and safety problems in the system …." *Id.* at 398. Defendants allege "Plaintiffs plead factual allegations that are speculative of all ODOC facilities that cannot adequately sustain an Eighth Amendment deliberate indifference violation against Defendants." The Plaintiffs' factual claims rise above speculation and sustain an Eighth Amendment violation in official capacity claims.

23

**B.** **Fourteenth Amendment claims against the Oklahoma Pardon and Parole Board for denying juveniles serving de facto LWOP sentences an opportunity for release to those juveniles who demonstrate the truth of *Miller*'s central intuition.**

Plaintiffs argue a liberty interest for juvenile offenders in the United States has developed through a series of Supreme Court cases. *Graham v. Florida*, 560 U.S. 48, 75 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); and *Montgomery v. Louisiana*, 577 U.S. ___, 136 S.Ct. 718 (2016). *Montgomery* clarified "[t]he ***opportunity for release will be afforded*** to those who demonstrate the truth of *Miller's* central intuition — that children who commit even heinous crimes are capable of change." *Montgomery*, 136 S.Ct. at 736. (**emphasis added**). Plaintiffs argue when there is a constitutional demand such as under the Eighth Amendment with juvenile sentencing, the Fourteenth Amendment is impacted which mandates that Defendant Romero, in her official capacity, must ensure compliance in consideration of the class of offenders whether it is nonhomicide or homicide.

The language used in *Montgomery* concerning "truth of *Miller's* central intuition" *Montgomery,* 136 S.Ct. at 736 is the demonstrated maturity and rehabilitation defined by *Graham* as a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Plaintiffs argue that Graham applies to homicide through *Montgomery* establishing a liberty interest in parole. There has never existed a liberty interest in parole and no constitutional or inherent right to parole until the mandates under these cases.

24

Plaintiffs argue in order to provide a meaningful opportunity, the concept of meaningful within the constitution is more than discretionary. A discretionary parole process provides a "meaningless ritual" that cannot meet the Fourteenth Amendment demands of the Constitution. A reading into the language of *Montgomery,* establishes a constitutional demand which determined a liberty interest to challenge the parole process has been established. Plaintiffs state the word "will" is a word of command removing discretion. *BA MTG. CO., INC. v. Unisal Development, Inc.*, 469 F. Supp. 1258 (D. Colo. 1979). "Specific words will limit the meaning of general words……" *In re Universal Service Fund Telephone Billing Practice Litigation*, 619 F.3d 1188, 1219 (10th Cir. 2010). The use of the word "will" indicate it is a mandatory requirement…. *Id*. at 1541.

The PPB's consideration must be determined based upon demonstrated maturity and rehabilitation. Plaintiffs argued in their Complaint there is no legislation in place that would mandate the PPB consider any factors as outlined in *Graham*, *Miller* or *Montgomery,* thus leaving a system solely discretionary. The Defendants admit in its motion to dismiss "[t]here are no written and formally established factors to be considered by the Parole Board or the Governor in evaluating parole applicants. The Board's only statutory guidance in the exercise of its discretion is that it acts as the public interest requires, and the sole existing statutory criteria dictate only the time of parole consideration." *Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979). [Doc. No. 5 at 27]. Defendants concede to Plaintiffs' claims with case law that there are no requirements for the Board's discretionary review which a court would have no meaningful standard against which to judge the agency's

25

exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The Defendant relies heavily on case law prior to *Graham*, *Miller* and *Montgomery*[4]. Defendants argue "in order for a person to have a liberty interest in parole entitled to protection, he must have a legitimate claim of entitlement to it...." Here, Plaintiffs have an entitlement to be considered based upon demonstrated maturity and rehabilitation as Defendants admit there are no factors which the Board must consider conceding to Plaintiffs' argument. The discretionary parole procedures in Oklahoma provide no evidentiary rules, no right to obtain expert assistance or testimony, no cross-examination, or compulsory process, or the assistance of counsel and cannot meet the meaningful requirements under the Constitution and enforce *Miller's* concerns. *Luna v. State*, 2016 OK CR 27, ¶ 21, 387 P. 3d 956, 963.

A Federal court has determined that a liberty interest exists in parole for those offenders that committed an offense as a juvenile. In *Brown, et al. v. Precythe*[5], Case No. 2:17-cv-04082-NKL, (W.D. of Missouri), the Plaintiffs filed a §1983 action against the Pardon and Parole Board (PPB). The Court in *Brown, supra,* concluded that under *Graham*, *Miller*, and *Montgomery*, the juvenile offender has a liberty interest in a meaningful parole review. The Defendants do not address nor object to the Court's finding in *Brown* while asserting there is no liberty interest in a parole system.

---

[4] *Shabazz v. Keating*, 1999 OK 26, 977 P.2d 1089, 1093; *See Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979); *Phillips v. Williams*, 1980 OK 25, 608 P.2d 1131, 1134 (emphasis added). *Boutwell v. Keating*, 399 F.3d 1203, 1213-15 (10th Cir. 2005).

[5] Filed by the McArthur Foundation.

A Federal Court in Maryland addressed a case that dealt with a life sentence with the possibility of parole it found that a life sentence still violated the Eighth Amendment because of an arbitrary parole system. See *Foster v. Dovey*, TDC-15-3979 (D. Md. Apr. 27, 2018). Plaintiffs argued Foster is analogous to the Class's claims regarding the adequacy of the parole system with the court stating in Foster:

> At first glance, *Miller* appears inapplicable to Foster's claims because although Foster was a juvenile at the time of the commission of the crime for which he was convicted, he received a sentence of life imprisonment, not life imprisonment without the possibility of parole. Foster, however, asserts that his sentence "in essence was transform(ed] without due process of law into a life sentence without the possibility of parole," Suppl. Pet. at 4, ECF No. 4, through a policy of former Maryland Governor Parris N. Glendening that an individual serving a life sentence would not be granted parole absent very limited circumstances, a policy referred to as "***life means life***." *Id.* In Foster's case, the Maryland Court of Special Appeals held, in affirming the denial of Foster's motion to alter or amend the judgment, that because a governor always retains discretion in granting or denying parole, Foster continues to serve a sentence of life imprisonment with the possibility of parole. *Foster v. Kupec*, No. 1841, at 6-7 (Md. Ct Spec. App. June 20, 2001) (citing *Lomax v. Warden*, 741 A.2d 476,480-81 (Md. 1999)).

In denying a motion to dismiss, the court held that the plaintiffs had "sufficiently alleged that Maryland's parole system operates a system of executive clemency, in which opportunities for release are 'remote,' rather than a true parole scheme in which opportunities for release are 'meaningful' and 'realistic,' as required by" *Graham,* at 75 (forbidding sentences of life without parole for juveniles committing non-homicide crimes). *Maryland Restorative Justice Initiative*, 2017 WL 467731 at *27.

Plaintiffs argued in their Complaint that in Oklahoma, the Governor retains sole

27

discretion in a grant of clemency, only after favorable recommendation by the PPB. This is a material fact indistinguishable from *Foster*. Another indistinguishable fact is that a term of life has been repeatedly addressed by the Tenth Circuit. In an unpublished opinion, *Jackson v. McCollum*, Case No. 17-6137, (10th Cir. Jan. 18, 2018), the Court found "at all relevant points in time, a life sentence in Oklahoma meant a term of imprisonment for the remainder of the convicted individual's natural life." See also *Parker v. Allbaugh*, No. 18-CV-0232-JED-FHM (N.D. Okla. Oct. 22, 2018) (same); *Young v. Allbaugh*, No. CIV 18-028-JHP-KEW (E.D. Okla. Oct. 23, 2018) (same); *Foster v. Allbaugh*, No. CIV 17-051-JHP-KEW (E.D. Okla. Aug. 28, 2018) (same). A natural life term or equivalent exceeds the life expectancy of the juvenile offender removing any realistic opportunity to obtain release based upon an inadequate discretionary parole system violating the Eighth and Fourteenth Amendments.

In this action, Plaintiffs have demonstrated a legitimate claim of entitlement to relief. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to minimize the risk of erroneous decisions. Procedural due process imposes constraints on governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fourteenth Amendment. At the threshold, therefore, to claim a due process violation, a plaintiff must first demonstrate that a deprivation of liberty or property is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), and must be based on more than "a unilateral hope." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981). Rather, an individual claiming a protected interest must have a "legitimate claim of entitlement" to it. *Roth*, *supra*.

## PROPOSITION VII

### PLAINTIFFS DISMISS INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANTS FUDGE AND ALLBAUGH AND AS ONLY OFFICIAL CAPACITY CLAIMS WERE STATED.

Defendants voluntarily dismiss assertions of individual capacity claims.

## PROPOSITION VIII

### PLAINTIFFS ARE ENTITLED TO DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs may have declaratory and injunctive relief. While Defendants argue that "Plaintiffs cannot maintain a § 1983 action for declaratory or injunctive relief unless they can demonstrate a good chance of being injured in the future. *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)." Plaintiffs argue Oklahoma has the highest homicide rate in the nation demonstrating a very good chance of injury in the future combined with health-related issues. Defendants argue there is no violation of federal law much less an ongoing one while Defendants claims are controverted by the alarming number of individuals incarcerated and the lack of staff to supervise the offender population. Plaintiffs argue that

29

the ongoing federal violations started in 1972. Now Oklahoma having the highest incarceration rate in the world; the most understaffed prisons which combined — create imminently dangerous conditions in violation of the Eighth and Fourteenth Amendments.

To sustain a claim for injunctive relief against a public official, a plaintiff must show an ongoing constitutional violation. *Green v. Mansour*, 474 U.S. 64 (1985); *see also O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669 (1974). Those violations are clear and represent a systemic failure within the State of Oklahoma. Plaintiffs state that because Defendant Allbaugh is substituted with Scott Crow, Interim Director and Defendant Fudge is substituted with Romero, in the official capacity claims, Plaintiffs' request for declaratory and injunctive relief should be granted.

## PROPOSITION XI

### DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Plaintiffs state that because no individual capacity claims exists, the qualified immunity defense fails. Plaintiffs seek to recover no damages from any state official. The purpose of this immunity is to "protect the public from unwarranted timidity on the part of public officials," "to ensure that talented candidates are not deterred by the threat of damages suits from entering public service," and to reduce "the chance that lawsuits will distract from the performance of public duties." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Richardson v. McKnight*, 521 U.S. 399 (1997)); see also *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

**PROPOSITION X**

**PLAINTIFFS CAN BRING A CLASS ACTION BECAUSE A PORTION OF THE CLAIMS EFFECT THE ENTIRE OFFENDER POPULATION.**

Defendants oppose a class action suit in its Motion to Dismiss while Plaintiffs do assert that the action is brought on behalf of themselves and a class of similarly situated individuals. Plaintiffs argue that their claims against Defendant Romero affect a class of juvenile offenders that are numerous while the claims against Scott Crow effect an entire class of inmate population. Plaintiffs have not sought independent class certification under Fed. R. Civ. P. 23, however, since the Defendants have objected to class certification the Plaintiffs request a determination in declaratory judgment that the action be certified as a class action.

Fed. R. Civ. P. 23 governs class actions which requires Plaintiffs to meet four prerequisites: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The Defendants present no facts supporting its objection to class certification that Plaintiffs cannot meet this burden. The Defendants claim "each individual Plaintiff has different qualifications for parole, thereby failing to meet the prerequisite for common questions." [Doc. No. 5 at 35] The Plaintiffs argue that the common factor in relation to juvenile offenders is that the parole considerations must be based upon demonstrated maturity and

31

rehabilitation. Defendants have conceded to this claim because no requirements exist for the discretionary parole process, a fact common to all juvenile offenders.

Defendants claim that Plaintiffs fail to identify any representative or allege how he/she can adequately represent any such class." [Doc. No. 5 at 35] Plaintiffs' attorneys are competent to represent the class of offenders discussed. Class certification should be recommended.

## CONCLUSION

Plaintiffs respectfully requests this Court to overrule Defendant's Motion to Dismiss as the defenses asserted by Defendants are insufficient to allow dismissal of the Complaint.

Respectfully Submitted,

/s/ RONALD "SKIP" KELLY
RONALD "SKIP" KELLY, OBA # 4937
Two Broadway Executive Park
205 NW 63rd, Suite 150
Oklahoma City, OK 73116
(405) 235-1976
(405) 286-6316 (fax)
Attorney for Plaintiffs

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on this 9th day of July 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

JON WILLIFORD, OBA #19598
JACKIE ZAMARRIPA, OBA#33647
Assistant Attorney General
Oklahoma Attorney General's Office
jon.williford@oag.ok.gov
jackie.zamarripa@oag.ok.gov

/s/ RONALD "SKIP" KELLY
RONALD "SKIP" KELLY, OBA # 4937

33